8751

### GRIMBALL v. C. W. PARHAM CO.

1. CIVIL AND CRIMINAL COURT OF CHARLESTON—STATUTES.—The act of 1913 amending the act of 1912 creating the Civil and Criminal Court of the county of Charleston can have no effect on the validity of the Court as constituted under the act of 1912 in the trial of a case therein before the enacting of the amendment.

2. IBID.—CONSTITUTIONAL LAW.—The Civil and Criminal Court of the county of Charleston is not a county Court but an "inferior Court" in the sense in which those words are used in the Constitution, and is authorized by section 1 of art. V of the Constitution of 1895.

3. CONTINUANCE.—The defendant did not bring himself within the rule in his motion for continuance in not showing the witnesses had been duly subpœnaed.

Before SHIPP, J., Charleston, June, 1913.    Affirmed.

Action by Frank Grimball against C. W. Parham Co., in Civil and Criminal Court of Charleston. The defendant moved to continue the case on the ground of the absence of material witnesses. The Judge held that he had not placed himself within the rule by showing the witnesses had been subpœnaed. In the Circuit Court the affidavits of the absent witnesses were produced, in which they swore the defendant had arranged with them to be present at the trial, but they could not be there because the sheriff, by whom they were employed, had sent them on an emergency trip in search of escaped convicts. The Circuit Judge held the showing not sufficient for him to grant a new trial. From Circuit order sustaining judgment below, defendant appeals.

*Mr. W. A. Holman,* for appellant, cites: *As to establishing inferior Courts:* 87 S. C., 290.

*Messrs. Miller, Bissell & Whaley,* contra, cite: *The act creating the Charleston Court is constitutional:* 2 S. C. 404; 14 S. C. 118. *Motions for continuance:* 78 S. C. 266; 48 S. C. 5; 56 S. C. 378; 78 S. C. 266; 38 S. C. 334; 93 S. C. 412.

March 18, 1914. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This was an action in the Civil and Criminal Court of Charleston commenced February 26, 1912, for damages for the taking of certain personal property and for punitive damages. The cause was tried before

the Judge of the said Court and a jury on December 3, 1912, and resulted in a verdict in favor of the plaintiff for $150, and judgment being entered thereon the defendant appealed to the Circuit Court, and the cause was heard by his Honor, Judge Shipp, and judgment affirmed. Defendant appeals and asks reversal of the same.

Exceptions one and two are as follows:

1. "Because an act entitled 'An act to amend sections 1423, 1425, 1429 and 1433 of volume I of the Code of 1912, as amended by an act entitled "An act to amend an act entitled 'An act to establish a Civil and Criminal Court in the county of Charleston, to be known as the Civil and Criminal Court of Charleston,'" in that said act, creating the Court, together with all acts amendatory thereof, are unconstitutional, null and void, for that the same is in conflict with article V, section 1, of the Constitution of 1895, and, therefore, said Court had no jurisdiction to hear or determine said cause or to render judgment therein.

2. "Because the defendant, having raised the point that the Civil and Criminal Court of Charleston was a Court organized and constituted without authority of law, said Court had no jurisdiction to hear and determine said cause, and the judgment thereof should have been overruled and reversed."

The exceptions must be overruled, as the act referred to in first exception was not passed until after this case had been tried in the Civil and Criminal Court of Charleston, and its provisions can have no bearing on the question of jurisdiction of that Court to try this case. The act referred to in the first exception was passed in 1913, and is not the act creating the Civil and Criminal Court of Charleston. The provisions of law relating to the creation of that Court are found in section 1421 to 1435, inclusive, of vol. I, the Code 1912. In February, 1912, the legislature passed an act entitled "An act to amend an act entitled 'An act to establish a Civil and Criminal Court in

the county of Charleston, to be known as the Civil and
Criminal Court of Charleston, to define the powers and
jurisdiction of the same, and to provide for the conduct of
the business thereof, and to abolish the judicial-magistrate's
Court therein.'"    Acts of General Assembly, 1912, page
584.    This act, as its title indicates, is amendatory of the
original act creating the Court.    In February, 1913, the
legislature passed another act, entitled "An act to amend
sections 1423, 1425, 1429 and 1433 of vol. I, Code of 1912,
as amended by an act entitled 'An act to amend an act
entitled "An act to establish a Civil and Criminal Court in
the county of Charleston, to be known as the Civil and Crim-
inal Court of Charleston,'" being act number 337 of the
acts of 1912, so as to provide for an increase in the salaries
of the Judge and clerk thereof, and regulate trial by jury
in said Court, Acts 1913, page 6.    The act referred to in
exception one as violating the provisions of article V, section
1 of the Constitution of 1895, is the act passed in February,
1913, and can have no bearing on the question of the juris-
diction of the Civil and Criminal Court of Charleston to try
a case in December, 1912, as the act was not then in force,
but passed later.

But the exceptions, one and two, raise the question that
the act creating the Civil and Criminal Court of Charleston
is unconstitutional and in violation of article V, section 1 of
the Constitution of 1895, and that the two acts
amendatory thereto are also in violation of that sec-
tion and article.    We think not.    Section 1 of article
V is as follows: "The judicial powers of the State shall be
vested in a Supreme Court and two Circuit Courts, to wit: a
Court of Common Pleas, having civil jurisdiction, and a
Court of General Sessions, with criminal jurisdiction only.
The General Assembly may also establish County Courts,
Municipal Courts, and such Courts in any or all of the
counties of this State, inferior to Circuit Courts, as may be
deemed necessary, but none of such Courts shall ever be

invested with jurisdiction to try cases of murder, manslaughter, rape, or attempt to rape, arson, common law, burglary, bribery, or perjury: *Provided,* Before a County Court shall be established in any county, it must be submitted to the qualified electors, and a majority of those voting must vote for its establishment." Section 1, article IV, of the Constitution of 1868, is practically the same as article V, section 1, of the Constitution of 1895, and has been passed upon and construed by this Court in *State* v. *Fillebrown,* 2 S. C. 404, wherein Chief Justice Moses says: "A Court in which a justice of the peace presides is an inferior one, and the jurisdiction accorded to it by the Constitution is not exclusive, because the General Assembly may establish 'such other inferior Courts as may be deemed necessary,' and the right to do so being permitted by the Constitution, such other Court is as much a Court established by the Constitution as is that of justice of peace."

"All Courts from which an appeal lies are inferior Courts in relation to appellate Court before which their judgment may be carried, but they are not, therefore, inferior Courts in the technical sense of those words. They apply to Courts of special and limited jurisdiction which are erected on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction."

"We think, therefore, that the term 'Inferior Court,' as used in the Constitution, is to be accepted as referring to the technical language usually employed to designate it, and not to be understood as importing that it is inferior only because its judgments may be corrected by an appellate tribunal. It does not, however, follow that such 'other inferior Courts' are to be of a more limited jurisdiction than the Courts of justice of the peace. It is by the authority of the Constitution that they are to be establshed and if by the same section it had already provided for a Court, which is already recoginzed as an inferior one, it clearly

shows an intention not to limit such Courts to one expressly named, but to leave it to the discretion of the legislature to multiply them if in its judgment necessary." * * *

"No matter what inferior Courts are established by the Constitution and it makes no difference in this respect whether 'other' is to refer to the Court of a justice of the peace or to 'municipal Courts' power is given to the General Assembly to establish inferior Courts to any extent they may deem necessary." This is not a county Court.

We think this is conclusive and these exceptions are overruled.

Exception three is overruled for the reasons assigned by Judge Shipp in his Circuit decree.

Judgment affirmed.